**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINE CART, | ) | CASE NO. 1:14-CV-1270 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| INVESTMENT RETRIEVERS, INC., | ) | NANCY A. VECCHIARELLI |
| | ) | |
| Defendant. | ) | **Report and Recommendation** |
| | ) | (Doc. No. 68) |

Currently pending before the Court is the motion of Defendant, Investment

Retrievers, Inc. ("IR"), for sanctions pursuant to Rule 37 of the Federal Rules of Civil

Procedure.  This case is before the undersigned United States Magistrate Judge on

referral.  (Doc. No. 32.)  For the reasons set forth below, the magistrate judge

recommends that: (1) the motion for sanctions be DENIED in part and GRANTED in

part, as detailed herein; and (2) IR be awarded reasonable attorney fees and costs

caused by Cart's misconduct during discovery in this case.[1]

### I.  Relevant Background

This case arises out of Cart's claims that IR has improperly reported inaccurate

information regarding Cart to the three major consumer credit reporting agencies,

Equifax, Transunion and Experian.  Specifically, Cart asserts that IR has improperly

reported that she owes IR a debt related to a credit card account opened with the now

defunct bank Washington Mutual.  IR purchased the debt from Washington Mutual.

---

[1] The parties are hereby instructed that, after the district court rules on the
motion for sanctions, the parties shall contact the magistrate judge's deputy
(wanda_f_golden@ohnd.uscourts.gov) to request a telephone conference in this matter
to discuss how the case shall proceed.

The following facts are alleged in Cart's complaint:

In March 2012, Cart obtained copies of her consumer credit report from each of the three credit reporting agencies and ascertained that IR had reported to all three agencies that Cart owed it a debt.  In May and June 2012, Cart filed disputes with each of the three credit reporting agencies, disputing the validity of the debt.  The credit reporting agencies requested that IR verify the debt.  Eventually, Cart learned from each of the credit reporting agencies that IR had verified the information regarding the debt and the debt would remain on her credit report.  In March 2014, Cart again obtained copies of her credit report from the credit reporting agencies and learned that IR was still reporting the debt on her credit report.  Cart insists that she has never had an account with IR and that she does not owe the company any debt.

On June 12, 2014, Cart, *pro se*, filed a complaint against IR, alleging that it had violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a, *et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), by, *inter alias*, failing to properly investigate her disputes of the debt; pulling her credit report without a permissible purpose; and willfully reporting inaccurate and erroneous information on Cart's credit report.  (Doc. No. 1.)  In October 2014, the magistrate judge conducted a case management conference in this matter, at which the parties agreed to complete discovery by April 24, 2015.  (Doc. Nos. 25, 26.)  During the case management conference and at multiple points thereafter in these proceedings, IR presented documents reflecting that, in late 2007, Washington Mutual mailed a statement for the credit card account at issue, addressed to Cart at 7234 State Route 45 in Orwell, Ohio.  (*See, e.g.,* Transcript of Deposition of Christine L. Cart ("Cart Dep.")

2

at 94:2-5, Doc. No. 68-3.)  The documents reflected that the credit card account had been used to, *inter alias*, make a purchase at Orwell Oil Company in Orwell, Ohio.  (*Id*. at 95:3-14.)  Additionally, a payment was made on the Washington Mutual account in November 2007.  (*Id*. at 58:5-7.)

In January 2015, the district judge referred this matter to the magistrate judge to resolve the parties' discovery dispute.[2]  (Doc. No. 28.)  The dispute arose out of IR's responses to Cart's discovery requests.  (*Id*.)  The magistrate judge resolved the dispute – much of which arose out of Cart's requests for relevant, confidential information that required a protective order – and the parties continued with discovery. (Doc. Nos. 33, 34.)

In early April 2015, IR filed a "Motion for Relief in Discovery," requesting the Court's assistance in resolving another discovery dispute between the parties.  (Doc. No. 48.)  Specifically, IR alleged that Cart refused to answer, or raised inappropriate objections to, many of IR's discovery requests.  (*Id*.)  Cart asserted the majority of her objections to those discovery requests aimed at obtaining information regarding whether the debt at issue actually belonged to Cart and whether she had made any payments on the debt.  (Doc. No. 51.)  On April 9, 2015, the magistrate judge conducted a telephonic hearing on the discovery dispute. (Doc. No. 50.)  Throughout the telephonic hearing, Cart repeatedly asserted that these issues were not relevant to her claims, and that the only relevant issue in the case – and, thus, the only appropriate

---

[2] Thereafter, the district judge "authorized" the magistrate judge "to rule in respect to any outstanding issues and issue appropriate orders as she deems necessary."  (Doc. No. 32.)

area for IR's discovery – was whether IR had conducted a reasonable investigation of Cart's dispute of the debt.  (Doc. No. 51)  She adamantly maintained that the validity of the debt was not an issue.

After the parties addressed the issue, the magistrate judge explained the standard for relevance, particularly with respect to discovery, and informed Cart that the issues to which she was objecting were more appropriately resolved in a decision on the merits of this case.  (Doc. No. 51.)  Further, the magistrate judge determined that IR was entitled to discovery with respect to, *inter alias*, whether: (1) the debt at issue actually belonged to Cart; and (2) Cart had ever made a payment on the debt.[3]  (*Id.*)  The magistrate judge instructed IR to rewrite some of the disputed discovery requests, and directed Cart to respond to the majority of the discovery requests, either as originally drafted or after revision by IR.  (*Id.*)  Further, the magistrate judge noted that the parties had set Cart's deposition for April 14, 2015, and instructed Cart that, during her deposition, "she must respond to the questions asked and may not refuse to answer on the same bases that she ha[d] asserted in declining to answer [IR's] interrogatories and which had been overruled by" the magistrate judge.  (*Id.*)  Finally, the magistrate judge extended the discovery deadline in this case to May 25, 2015.

_____

[3] There is no reasonable dispute regarding the *relevance* of whether the debt reported by IR and reflected on her credit report actually belonged to Cart, and whether she ever made a payment on the Washington Mutual account.  For example, in order to sustain her claim under the FCRA, Cart must demonstrate that the item reported by IR on her credit report was inaccurate.  *See Spence v. TRW*, 92 F.3d 380, 382 (6th Cir. 1996).  Evidence tending to prove that the information reported by IR was correct – such as Cart's address and banking information – was relevant to Cart's claim that the information was not accurate, and thus, fell within the broad scope of discovery permitted under the Federal Rules of Civil Procedure.

4

(*Id*.)

At the conclusion of the telephonic hearing, Cart placed several objections to the magistrate judge's ruling on the record.  (Doc. No. 50.)  She also moved to disqualify the magistrate judge on the basis of bias, and to stay the magistrate judge's ruling on the discovery dispute pending Cart's filing of written objections to the decision. (*Id*.)  The magistrate judge denied both motions and explained that Cart was required to follow the magistrate judge's orders until and unless the district court judge granted Cart a stay of those orders.  (*Id*.)  The magistrate judge explained the process for obtaining a stay of the magistrate judge's orders.  (*Id*.)  On April 10, 2015, the magistrate judge issued an order and a minute order setting forth the magistrate judge's rulings regarding the discovery dispute.  (Doc. Nos. 50, 51.)

On April 17, 2015, counsel for IR notified the magistrate judge that Cart had: (1) informed IR – via a "notice of postponement of deposition" – that she would not attend the deposition scheduled April 14, 2015 because Cart intended to f ile objections to the magistrate judge's April 10, 2015 orders; and (2) failed to attend her scheduled deposition.  (Doc. No. 58.)  On April 22, 2015, the magistrate judge conducted a telephonic hearing regarding Plaintiff's attendance at her deposition.  (Doc. Nos. 59, 60.)  During the hearing, the magistrate judge instructed Cart that: (1) Cart was not permitted to unilaterally postpone a scheduled deposition, particularly where there was no stay or protective order in place; and (2) the magistrate judge's orders in this case were in effect unless and until the district court judge set aside or overruled them, regardless of whether Cart had objected to the orders.  (Doc. No. 60.)  The magistrate judge reiterated that Cart's argument – that IR was not entitled to discovery regarding

5

whether the debt at issue belonged to Cart and whether Cart made any payments on the Washington Mutual account – was frivolous, and that these issues were appropriate subjects for discovery.  (*Id.*)  The magistrate judge instructed the parties to conduct Cart's deposition in the magistrate judge's court room on April 24, 2015.  (*Id.*)  Finally, the magistrate judge warned Cart that failure to attend the deposition "and/or refusal to answer questions may result in sanctions, up to and including the dismissal of this case and payment to [IR] of the costs associated with arranging [Cart's] deposition."  (*Id.*)

On April 24, 2015, Cart filed objections to the magistrate judge's April 10, 2015 orders. (Doc. No. 62.)  To date, those objections remain pending.  Also on April 24, 2015, counsel for IR deposed Cart in the courtroom of the magistrate judge.  (Doc. No. 63.)  The relevant details of that deposition will be discussed below.

On May 22, 2015, IR filed its motion for sanctions pursuant to Rule 37(b). (Doc. No. 68.)  In the motion, IR argues that Cart has willfully failed to cooperate in discovery, specifically by: (1) violating the April 10, 2015 order by continuing to assert unfounded and inappropriate objections to IR's discovery requests; and (2) asserting that she has no knowledge of facts or information that are available from sources within her control; and (3) falsely denying facts that are readily verifiable from other sources. (*Id.*)  IR requests that the Court sanction Cart by: (1) dismissing her claims; and (2) awarding IR attorney fees and costs incurred in seeking sanctions under Rule 37. (*Id.*)  Cart filed opposition to the motion.  (Doc. No. 74.)  IR filed a reply in support. (Doc. No. 77.)  Accordingly, the motion for sanctions is ready for disposition.[4]

---

[4] The disposition of the motion for sanctions is set forth in a Report and Recommendation rather than an Order because the recommendations made herein

6

## II.  Discussion

### A.    Rule 37

Under Rule 37, where a party fails to cooperate with "an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including "dismissing the action or proceeding in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v).  The decision to dismiss a party's claims for failure to comply with discovery orders is within the sound discretion of the trial court, and is appropriate where a party's conduct demonstrates willfulness, bad faith or fault.  *Regional Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 153-54 (6th Cir. 1988), *superseded on other grounds by* Fed. R. Civ. P. 37(c)(1), *as recognized in Vance, by and through Hammons v. United States*, No. 98-5488, 1999 WL 455435 (6th Cir. 1999).  The Supreme Court has recognized that dismissal, while "the most severe in the spectrum of sanctions" under Rule 37(b), "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to [engage in] such conduct in the absence of such a deterrent."  *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

Generally, dismissal of an action is reserved for "extreme" misconduct.  *See, e.g., Ortiz-Revera v. Mun. Gov't of Toa Alta*, 214 F.R.D. 51, 57 (D.P.R. 2003).  However, "disobedience of court orders, in and of itself, constitutes extreme misconduct

_____

substantially affect the evidence necessary for either party to prevail on summary judgment in this case.  The recommendations also arguably have a dispositive effect on at least some of Cart's claims.  The district court judge has not specifically referred this matter for the preparation of a report and recommendation on dispositive motions.

7

(and, thus, warrants dismissal)." *Id*.  "[T]he central question for the district court should be that of actual prejudice to the party seeking discovery, which in turn will control the sanction, if any, to be imposed on the non-complying party." *Austral-Pacific Fertilizers, Ltd. v. Cooper Indus., Inc.*, 108 F.3d 1376 (Table), 1997 WL 124097, *3 (6th Cir. 1997) (unpublished decision).  The Sixth Circuit has identified four factors to consider in determining whether dismissal of a plaintiff's complaint for failing to comply with discovery orders is appropriate, *i.e.,* whether: (1) the plaintiff's failure to cooperate was due to willfulness, bad faith or fault; (2) the party seeking dismissal was prejudiced by the failure to cooperate; (3) the plaintiff was warned that failure to cooperate could result in dismissal; and (4) the district court imposed or considered less drastic sanctions before dismissing the action.  *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995).  Moreover, the fact that a party is *pro se* does not insulate her from the sanction of dismissal, so long as a warning has been provided that noncompliance can result in dismissal.  *See, e.g., Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (affirming the district court's dismissal of the *pro se* plaintiff's complaint, noting the plaintiff's "sustained and willful intransigence" in refusing to cooperate with discovery requests).

## B.    Willfulness

In the context of Rule 37, "[a] willful violation occurs whenever there is a conscious and intentional failure to comply with the court order." *Bass,* 71 F.3d at 241. In this case, Cart's conduct during discovery has repeatedly reflected a willful refusal to comply with the magistrate judge's orders regarding discovery, particularly with respect

to the two issues most often at the center of the parties' disputes, *i.e.*, whether the debt actually belonged to Cart and whether Cart ever made a payment on the account.

Cart's conduct during her deposition reflects her most egregious and intentional failure to cooperate with the magistrate judge's orders in this case.  Prior to the deposition, the magistrate judge instructed Cart that her relevance- based objections to questions related to whether the debt was actually hers and whether she had made a payment on the account not only were without merit and were frivolous, but also that she was required to answer them.  (Doc. No. 51.)  Despite this instruction, Cart frequently failed to provide direct answers to questions related to these issues posed by IR's counsel.  For example, Cart repeatedly raised inappropriate objections, or claimed not to recall information responsive, to questions related to her residence history:

> Q:  And approximately when did you live at 1380 US
>      Route 322 in Colebrook?
>
> A:  I can't recall the dates.  It was before I moved to
>      Stumpville.
>
> Q:  Did you live there in 2008?
>
> A:  I don't believe so, no.
>
> Q:  Did you live there beginning in 2009?
>
> A:  No, I don't believe so.
>
> Q:  Did you live there beginning in 2010?
>
> A:  I don't believe so, no.
>
> Q:  Do you remember approximately how long you lived
>      at that address, 1380 US Route 322?
>      Approximately?
>
> A:  Maybe a year, year and a half.

9

Q:     So if you began residing on Stumpville Road around
       the end of 2013 and you lived at 1380 US Route
       322 for approximately a year, year and a half, would
       it be fair to say that you moved into or began
       residing at the 1380 US Route 322 address –

A:     Objection, leading.

Q:     – in mid to late 2013?  Or excuse me, 2012?

A:     Objection, leading.

Q:     You may answer the question.

A:     I can't say for sure.

Q:     Ms. Cart, I'm just trying to figure out where you've
       lived and I want to go back a little bit a ways and
       figure out exactly where you've resided at for a
       period of time.  Do you understand that?

A:     I understand that, yeah.

Q:     Would it be fair to say, then, that you began residing
       at 1380 US Route 322 in Colebrook –

A:     Objection, leading.

Q:     Please allow me to finish my question before you –

Court: Opposing counsel is permitted to lead, even in court,
       is permitted to lead an adverse witness.  You are
       adverse.  You're a plaintiff and [IR is the] defendant
       in this case.  So that objection should not be made
       anymore.

A:     Well, I object your Honor, because I have the right
       to object.  I am the witness, the deponent, and I am
       my own counsel.  I don't have any –

Court: [F]irst of all, a deposition is not a court proceeding. .
       . . The . . . objection to leading is simply – I'm trying
       to explain to you as a pro se party, is inapplicable to
       a situation where you're being examined by

10

opposing counsel.

\* \* \*

I'm telling you that it is an inappropriate objection to assert leading.  I'm telling you [that] you don't waive relevance and you don't have to say it every time.

Q:      Ms. Cart, would it be fair to say that you began residing at 1380 US Route 322 in Colebrook sometime in mid to late 2012?

A:      Objection, speculation.

Q:      You may answer the question.

A:      What year was it?

[Court Reporter reads back the question at the request of IR's counsel.]

I can't recall the date.

Q:      I'm not asking for a specific date, ma'am, I just want to get an idea about when you began living there.

A:      I can't recall the date.  I can't answer it.

Q:      Prior to living at . . . 1380 US Route 322 in Colebrook, where did you reside?

A:      I lived on Route 45.

Q:      Would that address be 7234 Route 45 in Orwell –

A:      Yes.

Q:      – 44076?

A:      Yes, it would be.

Q:      Can you give me an approximation of about how long you lived at that address?

A:      No.  I can't recall approximate, no.

11

Q:      Did you live there for 20 years, ma'am?

A:      No, I don't recall because I don't remember when I moved in there.

Q:      Do you think that you lived there for ten years?

A:      No.

Q:      No, you lived there for longer than ten years, or no, you lived there for less than ten years?

A:      You asked me if I lived there for ten years, I said no.

Q:      Did you live there for more than ten years?

A:      I can't recall.

Q:      Did you live there for less than ten years?

A:      I can't recall the dates.

Q:      Do you have any idea about whether you lived there in November or December of the year 2007?

A:      That was a long time ago.  No, I can't recall that.

Q:      What can you recall about living there at 7234 State Route 45?

A:      Objection, vague.

Q:      You may answer.

A:      I don't understand the question.

(Cart Dep. at 18:3-23:2.) [5]

---

[5] Cart's failure of memory and vague responses regarding her address were also apparent in her responses to written discovery requests.  In an interrogatory, IR requested that Cart provide her address history, including the dates at which she resided at each address, from July 2008 through the filing of her law suit.  (Doc. No. 68-2.)  IR also requested that Cart state whether she received mail at 7234 State Route 45

Cart's answers to questions regarding her financial information were similarly non-responsive:

> Q:   Were you paying rent on a monthly basis when you lived at that address, 1380 US Route 322?
>
> A:   Objection, relevance.
>
> Q:   You may answer.
>
> A:   I was paying rent.
>
> Q:   Do you remember how much it was, your rent?
>
> A:   No, I don't remember.
>
> Q:   Did you pay – when you paid your rent when you resided at 1380 US Route 322, did you pay by check?
>
> A:   Objection, relevance.
>
> Q:   You may answer.
>
> A:   No.
>
> Q:   Did you pay by cash?
>
> A:   Yeah.
>
> Q:   Every time you paid by cash?
>
> A:   I can't recall.
>
> Q:   Did you ever write – when you paid your rent, did you ever write a check once?

---

in Orwell in December 2007, the date of the credit card statement mailed to that address.  (*Id*.)  With respect to her address history, Cart provided three addresses, but stated that she had "no knowledge as to when she resided" at each address.  (*Id*.)  With respect to whether she received mail at the State Route 45 address in December 2007, Cart stated that she had "no knowledge of receiving mail in December 2007" at that address.  (*Id*.)

A:      I don't recall.

Q:      Is it possible that you paid by check?

A:      I don't recall.

Q:      It's not possible?

A:      Objection, asked and answered.

Q:      You can't recall if it was possible?

A:      Objection, asked and answered.

Court:  Answer the question.

A:      I don't recall.

(Cart Dep. at 24:8-25:10.)  These types of responses permeated Cart's testimony during her deposition, and always with regard to information reasonably calculated to lead to evidence related to the issues of whether the debt reported by IR belonged to her, and whether she had ever made a payment on the account.  For example, Cart could not recall approximately when or for how long she was employed at the only job she has ever had – even whether it was for a long period of time or just a few months. (*Id*. at 40:7-22, 41:5-7.)  She could not recall whether she had a checking account other than the one she maintained at the time of the deposition:

Q:      Do you have a checking account, Ms. Cart?

A:      Yes, I do.

Q:      Where is that account located, with what bank?

A:      Huntington.

Q:      How long have you had that checking account at
        Huntington?

14

A:      I believe a year, year and a half.

Q:      Prior to opening that checking account with Huntington, did you have a checking account anywhere else?

A:      Not that I recall.

Q:      So before this Huntington account, you've never had a checking account, is that what you're saying?

A:      I don't recall.  It's been a long time.

Q:      Where did you do your banking prior to banking with Huntington?

A:      Objection, assuming facts not in evidence.

Q:      You may answer.

A:      Rephrase the question.

Q:      Prior to approximately a year ago when you opened an account at Huntington, where did you do your banking?

A:      Objection, assumes facts not in evidence.

Q:      You may answer.

A:      Asked and answered.  I said I don't recall.

Q:      So other than the Huntington account that you have, you can't recall anywhere else you've ever done any banking.  Is that your testimony?

A:      I can't recall.  That's been a long time.

Q:      Is it your testimony, that you –

A:      Asked and answered.

Q:      Please allow me – please try to let me finish my question before you provide your answer.  I just want to make sure that I understand what's going on

15

here.  is it your testimony that you cannot recall any other bank other than Huntington, which you said you opened last year, where you've done banking? is that your testimony?

A:      Asked and answered.  I said I don't recall.

Q:      Is that your testimony ma'am, it's a yes or no question.

A:      I don't recall.

Q:      You can't recall if that's your testimony?

A:      Badgering.  Asked and answered.

Q:      Have you ever — have you ever done any banking at KeyBank?

A:      I don't recall.

Q:      How about Fifth Third bank?

A:      I don't recall.

Q:      How about Chase Bank?

A:      I don't recall.

Q:      How about HSBC Bank?

A:      I don't recall.

Q:      How about Citibank?

A:      Don't recall.

(Cart Dep. at 44:2-46:11.)[6]

---

[6] During the deposition, Cart was similarly unable to recall: which year of high school she completed (Cart Dep. at 37:8-15); the name of the college she attended (despite having not completed high school) and when she attended it (*Id*. at 38:6-19); the length of time that she had been unemployed (*id*. at 39:19-20); how she cashed her paychecks when she worked (*id*. at 46:12-25); how long she had worked for her former

In addition to repeatedly providing non-responsive answers to questions, Cart demonstrated an intention to disobey the magistrate judge's orders.  For example, after being instructed by the magistrate judge that objections based on relevance and to leading questions were inappropriate for deposition, Cart asserted these objections multiple times.  (Cart Dep. at 53:20-54:9.)  Cart also refused to sign a release of her employment information, despite being instructed to do so – after argument regarding the relevance of the requested information – by the magistrate judge:

> Court:  I want to indicate that I have directed Ms. Cart to execute employee records, the only . . . employer whom she can recall.
>
> *   *   *
>
> I directed Ms. Cart, as the record reflects, to execute a waiver for employment records pertaining to dates of employment and information pertaining to salary and deposit and checking account, bank account information.  Do you still refuse?
>
> A:  Yes, Your Honor.  I'm going to file a protection order.  I'm going to request a protection order.
>
> Court:  I'm directing you to sign that now.
>
> A:  I'm going to file a protection order.  I'm going to request in writing –
>
> Court:  My orders –

_____

employer and her pay rate there (*id*. at 40:15-17, 41:20-22); whether she had ever held another job (*id*. at 42:15-17); which Walmart locations she and her husband used to cash her husband's pay checks (*id*. at 79:13-80:18); and whether she had ever had accounts with various creditors despite being shown a copy of what was represented to be her credit report containing entries related to those creditors (*id*. at 53:3-15). Counsel for IR asked Cart whether she had ever been diagnosed with a condition that affected her memory, and she responded, after objecting, that she had not.  (Cart Dep. at 40:23-41:2.)

17

A:       – to the Court.

Court:   – are valid until or unless they are set aside.

A:       Well then, let's go talk to the judge.

Court:   You are talking to the judge.

A:       You're the magistrate.

Court:   I have authority to enter orders in discovery matters.
         That seems to be the problem in this case, that you
         think that everything I order you can just refuse to
         obey until Judge Oliver either agrees with me or
         disagrees with me.  That's not the case.  You need
         to file your stay.

         Go ahead and . . . this will just be one of the many
         things that you are refusing to do at the Court's
         [instruction].

 (Cart Dep. at 61:7-63:2.)

        Cart's responses during her deposition were non-responsive and evasive.

Review of the deposition transcript reveals that, in those instances when Cart was

instructed to answer despite lodging unfounded objections, she asserted a failure of

memory in response to questions seeking information relevant to the issues in this

case. It strains credulity that she would be unable to recall even general information

about fundamental facts of her daily life, such as where she lived and worked, whether

and where she maintained a bank account, and where she and her spouse cashed their

pay checks.  *See, e.g.,* *Tech. Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 632-

33 (6th Cir. 2006) (affirming dismissal where the plaintiffs' explanation for their failure to

provide requested information were "uncorroborated and unbelievable").  And Cart

engaged in this obstructive behavior despite instructions from the magistrate judge –

18

prior to and during the deposition – that she was required to respond to questions and provide information despite her disagreement with the magistrate judge's orders.  Cart's conduct during her deposition reflects a willful failure to cooperate with the magistrate judge's orders and instructions, and with the discovery process in general.  *See, e.g., Laues-Gholston v. Mercedes-Benz Fin.Servs. USA, LLC*, No. 14-10844, 2014 WL 9866450, *8 (E.D Mich. Nov. 28, 2014) (recommending dismissal under Rule 37(b), and noting that, during his deposition, the plaintiff gave "non-responsive, evasive answers that have a clear air of smug gamesmanship to them"), *adopted by* 2015 WL 3506691 (June 2, 2015).  Cart's conduct is the epitome of willful obstructionist behavior and gamesmanship in this context.  *See Regional Refuse Sys.*, 842 F.2d at 155 (affirming Rule 37 dismissal where the plaintiff was guilty of, *inter alias*, "evading questions, . . . refusing to identify persons he claimed provided him information upon which his lawsuit was based, [and] claiming vague and spurious privileges").

Cart's intentional efforts to obstruct the discovery process are also evident in her responses to IR's discovery requests and deposition questions regarding Cart's various filings in the bankruptcy court.  During her deposition, Cart agreed that she had twice filed for bankruptcy and represented herself each time, but could not recall when. (Cart Dep. at 96:12-21, 99:12-16.)  When counsel for IR showed her a document that he advised her was a printout of a form from her 2010 bankruptcy case, Cart declined to agree that the document was what it appeared to be:

> Q:    Do you have any reason to believe that this is not a copy of Schedule F - Creditors Holding Unsecured Nonpriority Claims that you filed in this bankruptcy case?

A:      Well, yeah, I do have reason to believe because it's
        not authentication.  I mean it's not authenticated.
        It's not a certified copy from the court.  So I don't
        even know if this is an – what's in here is in there.

Q:      Are you saying that this document has been altered
        in some way?

A:      I don't know if it has or not.  I can't answer that.  It's
        not – when you get court documents, they have to
        certified by the court, the Clerk of Court.

Q:      Okay.  So you do not agree that this is [a] document
        from your bankruptcy case . . . or a copy of that
        document.

A:      I can't answer that because there's no certification
        that it's from the clerk.

Q:      Does this look like a copy of the Schedule F that you
        filed in your bankruptcy case in 2010?

A:      That was 14 years ago.

Q:      2010 is not –

A:      I don't –

Q:      – 14 years ago,

A:      – even remember.

Q:      – ma'am.

A:      2010.  All right.  So it was four years ago.  I, I mean,
        I know I filed bankruptcy, but I don't know what
        documents, I don't remember what was in there.  I
        don't remember what the schedules were and that
        was a while ago.

(Cart Dep. at 98:3-99:11.)  Thereafter, Cart stated that she could not remember listing

IR as one of the creditors on the Schedule F form from her 2010 bankruptcy.  (*Id*. at

11:10-101:3.)  Cart made similar objections to, and testified that she had the same

20

failure of memory regarding, questions related to the listing of IR as a creditor in her

2011 bankruptcy case.  (*Id*. at 103:2-106:12.)

Subsequent to her deposition, Cart completed her Second Supplemental

Responses to IR's discovery requests, *i.e.*, those responses completed after the

magistrate judge issued her April 10, 2015 order directing Cart to respond to IR's

discovery requests. (Doc. No. 68-2.)  Several of IR's requests for admission seek

admissions from Cart regarding her bankruptcy filings:

> 7.  In Schedule F of her bankruptcy filing in Case
> Number 10-42070, Plaintiff listed IR as a creditor
> holding an unsecured non-priority claim.
>
> 8.  In Schedule F of her bankruptcy filing in Case
> Number 10-42070, Plaintiff listed the amount of IR's
> claim as $13,565.00.
>
> 9.  Plaintiff's 2010 bankruptcy, Case Number 10-42070,
> was dismissed without Plaintiff receiving a discharge
> of any of her debts.
>
> 11.  In Schedule F of her bankruptcy filing in Case
> Number 11-41578, Plaintiff listed IR as a creditor
> holding an unsecured non-priority claim.
>
> 13.  Plaintiff's 2011 bankruptcy, Case Number 11-41578,
> was dismissed without Plaintiff receiving a discharge
> of any of her debts.

(*Id*.)  Cart provided an identical response to each of the above requests for admission:

> Plaintiff objects to this request for admissions, it requests
> information that is neither relevant nor reasonably calculated
> to lead to the discovery of evidence admissible at trial.  It
> assumes facts not in evidence.  Any bankruptcy Plaintiff may
> have filed is immaterial and irrelevant to Plaintiff's causes of
> action in the complaint, bankruptcies are a matter of public
> record, [*sic*] Subject to and without waiving these objections,
> *Plaintiff admits she filed a Chapter 13 bankruptcy in the*
> *United States Bankruptcy Court, Northern District of Ohio*

21

*and denies the remainder of this request for admissions*.

(*Id*.)  In other words, although Cart admits that she filed bankruptcy, she denies the remainder of the particular details set forth in each request for admission.

As noted by IR, review of the publicly available documents associated with each of Cart's bankruptcy filings (of which this Court can and should take judicial notice, including for all future proceedings in this matter) reveals that, in fact, the detailed information included in each of the above requests for admission is true.  For example, in June 2010, Cart, *pro se*, filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the Northern District of Ohio, case number 10-42070.  (*See* N.D. Ohio Bankr. Ct. Dkt. No. 10-42070 at Doc. No. 1.)[7]  In Schedule F of that bankruptcy case, Cart listed IR as a creditor holding an unsecured nonpriority claim, incurred in 2008, in the amount of $13,565.00, facts which she denied in response to Request for Admission Nos. 7 and 8.  (*See* N.D. Ohio Bankr. Ct. Dkt. No. 10-42070 at Doc. No. 14, p. 18.)  In September 2010, the bankruptcy court judge dismissed the case in number 10-42070 for failure to abide by the orders of the bankruptcy court.  (*Id*. at Doc. No. 46.) Cart denied this fact in her response to Request for Admission No. 9.

In May 2011, Cart, *pro se*, filed another Chapter 13 Voluntary Petition in the Northern District of Ohio, case number 11-41578.  (*See* N.D. Ohio Bankr. Ct. Dkt. No.

---

[7] The petition in case number 10-42070 bore the name Christine L. Cart, and the address of 7234 State Route 45, Orwell, Ohio – the address to which the December 2007 statement was sent, and an address where Cart concedes she resided at some point that she cannot clearly recall.  (Cart Dep. at 21:20-22:2.)  Further, a search of the Pacer Case Locator reveals only two petitions for bankruptcy filed by individuals named Christine Cart in the Northern District of Ohio.  One is case number 10-42070.  The other is case number 11-41578.

22

11-41578 at Doc. No. 1.)[8]  In the Schedule F in the bankruptcy case, Cart listed IR as a creditor holding an unsecured nonpriority claim, but did not specify an amount or a date on which the claim was incurred.  (*See* N.D. Ohio Bankr. Ct. Dkt. No. 10-41578 at Doc. No. 22, p. 3.)  She denied these facts in response to Request for Admission No. 11.  In January 2012, the bankruptcy court dismissed the case in number 11-41578, finding that Cart was "attempting to use the bankruptcy process for purposes other than reorganization and payment of her creditors," and that Cart "did not intend to fulfill her obligations as a debtor or to propose a chapter 13 plan in good faith."  (*Id*. at Doc. No. 48, p. 6.)  In her response to Request for Admission No. 13, Cart denied that her 2011 bankruptcy case was dismissed without a discharge of her debts.

Similarly, in Interrogatory No. 9, IR requested that Cart explain the differences between the information regarding IR listed in her 2010 bankruptcy petition (specifying an amount of $13,565.00 and a 2008 date incurred) and that listed in her 2011 petition (providing no amount and indicating that she was not certain when the claim was incurred).  (Doc. No. 68-2.)  Cart responded, "Plaintiff has no knowledge of any amount owed to IR filed within a bankruptcy and does not remember, if at all, an amount listed was unknown."  (*Id*.)

Cart's responses to IR's discovery requests regarding her bankruptcy cases are another example of her willful misconduct in this case.  Review of the documents available in her bankruptcy filings demonstrates that Cart intended to frustrate reasonable inquiry into the relevant issues in this case.  This is undisputably willful

---

[8] The petition in case number 11-41578 bears the same identifying information as the petition in number 10-42070.

misconduct.  *See, e.g., Laues-Gholston*, 2014 WL 9866450 at *7 (finding that plaintiff's conduct, including providing false testimony was "at best, obstructionist, and at worst, intentionally false and/or misleading," and, thus, was willful).  Further, Cart's response to Interrogatory No. 9, in which she claimed to have "no knowledge" of information related to IR in any of her bankruptcy filings, was also obstructionist.  This is particularly egregious  in light of the fact that Cart completed her responses to the discovery requests after the deposition, during which time counsel for IR confronted her with documents related to her bankruptcy filings and attempted to question her about their contents.

Cart offered similarly obstructive responses to IR's interrogatories regarding the disputes Cart filed with the credit reporting agencies.  In Interrogatory Nos. 10 through 12, IR asked Cart to explain why she disputed the debt reported by IR despite the fact that, with respect to each credit reporting agency, IR reported the debt as associated with a name that Cart used and with her birth date and social security number.  (Doc. No. 68-2.)  In response to each interrogatory, Cart stated that she had filed the particular dispute, but then responded, "Plaintiff has no knowledge as to the remainder of the question." (*Id*.)  In other words, although Cart conceded that she had made the disputes, she claimed to have "no knowledge" as to why she had done so – despite the fact that the disputes are central to her claims in this case.  Finally, despite testifying that she had maintained a checking account since at least eighteen months prior to her deposition, Cart stated that she had no documents responsive to IR's request for documents "regarding, relating to, or evidencing the existence of" Cart's bank accounts. (*Id*.)  In her opposition to the motion for sanctions, Cart asserts that she possesses no

24

such documents because she destroys documents associated with her bank account. (Doc. No. 74.) Cart does not explain, however, whether and why she was precluded from obtaining responsive documents via other means, such as accessing her bank account via the internet or requesting documents in person from her bank.

Similarly, during her deposition, Cart declined to accept the representation from IR's counsel that credit card statements that were produced to Cart during discovery and offered into evidence during her deposition were actually credit card statements. (Cart Dep. at 87:19-89:3.) She claimed to never have seen a credit card statement before and refused to assume that the statements were "valid" for the purposes of the deposition. (*Id*. at 88:22-25,89:13-16.) Cart conceded that the name on the statements was her own and that the address on the statements – 7234 State Route 45 – was a "former address." (*Id*. at 93:12-23.) Defense counsel noted that, one of the statements reflected a payment of $258.00 made in November 2007, as well as a purchase from Orwell Oil Company. (*Id*. at 94:12-19, 95:7-11.) Cart denied making the payment, and stated that she did not "use propane for anything, so I wouldn't have bought that." (*Id*. at 94:9-11, 95:15-18.) Later in the deposition, however, IR's counsel noted that, in one of her bankruptcy filings, Cart had listed a monthly expense of $114 for propane. (*Id*. at 149:23-150:5.) She then conceded that she had listed the expense, and explained the contradiction with her earlier deposition testimony:

> Q:    Okay, do you recall your testimony before when you said that you did not use propane to heat your home?
>
> A:    Yes, I remember that.
>
> Q:    Okay.  Then why is propane listed as a utility cost on

this schedule?

A:    Because it's not used to heat my home.  It's used to heat water tanks.

(*Id*. at 150:6-13.)  Cart denied that she had ever purchased propane from Orwell Oil Company.  (*Id*. 150:17-18.)  Cart's testimony regarding this issue is another example of her reliance on vague, evasive and possible false responses to frustrate IR's attempt to obtain discovery in this case.

In sum, Cart has repeatedly demonstrated a pattern of willful misconduct during discovery in this case.  She has refused to comply with the magistrate judge's orders, and has provided vague, inaccurate and incredulous responses to IR's discovery requests and deposition questions.  Accordingly, the first factor of the test enunciated in *Bass* weighs in favor of dismissal, or at least a lesser sanction, in this case.

**B.**    **Prejudice to IR**

In this context, prejudice occurs when the plaintiff's misconduct impairs the defendant's ability to prepare a defense.  *Technology Recycling Corp*., 186 F. App'x at 636.  In this case, IR can defend against Cart's claims by, *inter alias*, introducing evidence that the information it reported to the credit reporting agencies was accurate, *i.e.*, that the debt reported by IR was actually Cart's debt.  *See Spence*, 92 F.3d at 382. Accordingly, IR is entitled to discovery of information that connects the debt to Cart, or information reasonably calculated to lead to such information.  This includes Cart's residence, work, banking relationships and details pertaining to financial transactions, as these areas of discovery may reveal or lead to the discovery of, *inter alias*, evidence that Cart used the Washington Mutual account or made a payment on the account at

26

some point. Cart's conduct during discovery has rendered it nearly impossible for IR to conduct a reasonable investigation of these issues. For example, Cart's insistence that she cannot recall whether she had a bank account during the relevant time period – or at any time other than the last 18 months – precludes IR from obtaining her banking records by any method other than issuing subpoenas to every financial institution in an undefined geographical area at which Cart may have maintained a bank account during the relevant period of time. Her purported inability to recall even an approximate chronology of her residences precludes IR from investigating whether purchases made on the Washington Mutual account were made in the proximity of Cart's residence at a particular time, and whether, in the ordinary course of events, she received billing statements at a particular address. In short, Cart's misconduct has stonewalled IR with respect to at least certain of her claims, as she practically requires IR to engage in an extensive fishing expedition to obtain information vital to its defense in this matter. The resulting prejudice to IR's ability to defend against her claims is apparent, and weighs in favor of granting dismissal or some other sanction in this case.

### C.      Whether Lesser Sanctions Will Suffice

Cart's misconduct in this case has been egregious. As discussed above, she has essentially precluded IR from obtaining the information it requires to defend itself against her claims without engaging in an unreasonably expensive and widespread hunt for evidence, which, even with the exercise of reasonable diligence, may be impossible to obtain. The Sixth Circuit, however, has counseled against granting the extreme sanction of dismissal without first considering lesser sanctions. *See Beil v. Lakewood Eng'g and Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994) ("Dismissal is the

27

sanction of last resort."). A district court abuses its discretion when it imposes the sanction of dismissal without considering less drastic sanctions. *See Regional Refuse, 842 F.3d at 154*.

In this case, Cart's misconduct can be addressed by imposing sanctions that fall short of dismissal. Rule 37 authorizes a district court to issue other orders to address a party's failure to cooperate in discovery. These include orders "directing that matters embraced in the order or other designated facts be taken as established for the purposes of the action, as the prevailing party claims," and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence." Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii).

Given the nature of Cart's noncompliance and the issues involved in that noncompliance, the magistrate judge recommends that the district court impose the following sanctions on Cart:

(1)   The requests for admission addressing Cart's various bankruptcy filings (Request for Admission Nos. 7, 8, 9, 11, and 13) should be deemed admitted;

(2)   Cart should be deemed to have resided at 7234 State Route 45 in Orwell, Ohio at the time that the credit card statement at issue was sent to that address;

(3)   Cart should be deemed to have received the credit card statements produced by IR in its responses to her discovery requests, and to have made the November 2007 payment reflected in those statements;

(4)   Cart should be precluded from offering any explanation adverse to IR as to why she listed IR as a creditor in her 2010 and 2011 bankruptcy filings; and

(5)   Cart should be precluded from offering any evidence that is inconsistent with

28

> her deposition testimony and responses to discovery requests regarding those
> areas about which she stated that could not recall specific information
> (including but not limited to: her residence history, bank account information,
> and work history).

The magistrate judge considered lesser sanctions, including requiring Cart to pay the fees and costs associated with IR's efforts to obtain the evidence that her obstructive conduct obscures from discovery.  Such a sanction, however, would not suffice in this case.  As described above, Cart's conduct has rendered it nearly impossible for IR to obtain information necessary to challenge Cart's testimony and claims using any reasonable method of discovery.  Accordingly, any effort to do so would be prohibitively costly and time consuming, further delaying this case.  The sanctions recommended address Cart's misconduct and allow for the efficient progress of this matter, which has now been pending for more than one year.

### D.    Attorney Fees

Finally, Rule 37(b)(2)(C) requires that, when a court grants relief under Rule 37(b)(2), it "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Here, given the nature of Cart's misconduct, there is no reasonable basis for concluding that Cart's misconduct was substantially justified.  For example, there is no evidence that there was a good faith dispute regarding the limits of the scope of discovery in this case, *see Liew v. Breen*, 640 F.2d 1046 (9th Cir. 1981), or that Cart's conduct was otherwise reasonable, *see SCM Societa Commerciale S.P.A. v.*

29

*Indus. & Commercial Research Corp.*, 72 F.R.D. 110 (N.D. Tex. 1976).  Accordingly, Rule 37(b)(2)(C) mandates the award of IR's attorney fees and costs caused by Cart's misconduct.

### III.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends that: (1) the motion for sanctions be DENIED in part and GRANTED in part, as detailed herein; and (2) IR be awarded reasonable attorney fees and costs caused by Cart's misconduct during discovery in this case.

The Clerk is directed to send a copy of this Report and Recommendation to Plaintiff via e-mail as well as regular mail.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: October 1, 2015

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**